UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| KENDRIX T. DAVIS, | : | |
| | : | |
| Debtor | : | Case No. 07-50761 RFH |
| | : | |
| | : | |

BEFORE

ROBERT F. HERSHNER, JR.
CHIEF UNITED STATES BANKRUPTCY JUDGE

COUNSEL:

    For Kendrix T. Davis:                  Ms. Lisa Williams
                                                              Mr. Robert O. House
                                                              433 Cherry Street
                                                               Suite A
                                                               Macon, Georgia 31201

    For GMAC:                                  Ms. Lisa Ritchey Craig
                                                                171 17th  Street, NW
                                                                Suite 975
                                                                 Atlanta, Georgia 30363

    For Chapter 13 Trustee:                Ms. Laura D. Wilson
                                                               P.O. Box 954
                                                               Macon, Georgia 31202

**MEMORANDUM OPINION**

Kendrix T. Davis, Debtor, filed on July 19, 2007, his modified proposed Chapter 13 plan.[1] GMAC filed an Objection To Confirmation.[2] Debtor's proposed Chapter 13 plan came on for a hearing on confirmation on August 15, 2007. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

The material facts are not in dispute. On February 26, 2005, Debtor purchased a new 2005 Chevrolet Trail Blazer (the "truck") from Youmans Chevrolet Company. Debtor financed the purchase by entering into a Retail Installment Sale Contract (the "contract") that Youmans Chevrolet immediately assigned to GMAC. GMAC holds a purchase money security interest in Debtor's truck. Debtor purchased the truck for his personal use. Under the contract, Debtor was to pay the amount financed, $39,079.49 plus interest of 4.9 %, by making seventy-two monthly payments of $628.83 beginning on April 13, 2005.

Debtor defaulted on his monthly payments to GMAC. Debtor filed a petition under Chapter 13 of the Bankruptcy Code on April 4, 2007. The current balance of

---

[1] 11 U.S.C.A. § 1323(a) (West 2004) (debtor may modify Chapter 13 plan at any time before confirmation).

[2] GMAC's objection was filed in opposition to Debtor's original proposed Chapter 13 plan. GMAC opposes Debtor's modified proposed Chapter 13 plan on the same grounds.

Debtor's obligation to GMAC is $30,627.44.  Debtor offers to pay this amount plus interest of 4.9 % through his proposed Chapter 13 plan.  GMAC contends that it is entitled to receive interest on its claim at the prime rate, which the parties stipulate is 8.25 %.

Debtor has steady employment and is in good health.  Debtor's truck is in good condition, is well maintained, and is insured.  The Chapter 13 Trustee reports that Debtor's proposed plan is feasible.  Trustee has no objection to confirmation of the proposed plan.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective, in relevant part, on October 17, 2005.  Debtor's bankruptcy petition was filed on April 4, 2007, and is governed by BAPCPA.

Debtor purchased his truck less than 910 days before he filed for bankruptcy relief.  Under BAPCPA, Debtor's proposed Chapter 13 plan must pay the full amount of GMAC's claim even if the value of the truck is less than the claim.  GMAC's claim is known as a "910 claim." 11 U.S.C.A. § 1325(a) (West Supp. 2007) (unnumbered paragraph after subsection (9)); In re Ross, 355 B.R. 53, 59 (Bankr. W. D. Tenn. 2006).

Section 1325(a)(5) of the Bankruptcy Code provides three alternatives for dealing with an allowed secured claim that is provided for by the Chapter 13 plan.

First, the creditor can accept the Chapter 13 plan.[3] Second, the Chapter 13 plan can provide that the creditor retain the lien securing its claim and the debtor can pay the claim by making periodic payments.[4] Finally, the debtor can surrender the property securing the claim to the creditor.[5]

GMAC has not accepted the proposed Chapter 13 plan. Debtor has not surrendered his truck to GMAC. Thus, Debtor's Chapter 13 plan must provide that GMAC retain its lien and Debtor must make periodic payments on GMAC's claim.

Section 1325(a)(5)(B) provides in part:

### § 1325. Confirmation of plan

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . .

(5) with respect to each allowed secured claim provided for by the plan—

. . .

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim . . . [and]

---

[3] 11 U.S.C.A. § 1325(a)(5)(A) (West 2004).

[4] 11 U.S.C.A. § 1325(a)(5)(B) (West Supp. 2007).

[5] 11 U.S.C.A. § 1325(a)(5)(C) (West 2004).

>> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;

11 U.S.C.A. § 1325(a)(5)(B) (West Supp. 2007).

This section is commonly known as the "cram down option" because it may be enforced over a claim holder's objection. Till v. SCS Credit Corp., 541 U.S. 465, 124 S.Ct 1951, 1955, 158 L.Ed 2d 787 (2004).

"Cram down" refers to confirmation of a Chapter 13 plan over the objection of the holder of a claim. "Strip down" refers to the bifurcation of a claim into its secured and unsecured components under 11 U.S.C. § 506. The secured claim is said to be "stripped down" to the value of the collateral. In re Pryor, 341 B.R. 648, 651 (Bankr. C.D. Ill. 2006); In re Wright, 338 B.R. 917, 919 (Bankr, M.D. Ala. 2006).

GMAC's "910 claim" can be crammed down but cannot be stripped down through Debtor's Chapter 13 plan. In re Wright, 338 B.R. at 919-20.

There is no dispute that GMAC's claim is an "allowed secured claim provided for by the plan" and that GMAC will retain its lien on Debtor's truck.

Chapter 13 "Plans that invoke the cram down power often provide for installment payments over a period of years rather than a single payment. In such circumstances, the amount of each installment must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds

5

that of the allowed claim." Till, 124 S.Ct. at 1955-56.  This is referred to as payment of "present value."  Id. at 1956, n. 4.  Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187, 2190-91, 124 L.Ed. 2d 424 (1993).

"[A]lthough §1325(a)(5)(B) entitles the creditor to property whose present value objectively equals or exceeds the value of the collateral, it does not require that the terms of the cram down loan match the terms to which the debtor and creditor agreed prebankruptcy. . . ."  Till, 124 S.Ct. at 1959.  The terms of the parties' original contract are irrelevant.  Id. at 1961.

In Till, The Supreme Court stated:

> For one thing, the cram down provision applies not only to subprime loans but also to prime loans negotiated prior to the change in the circumstances (job loss, for example) that rendered the debtor insolvent.  Relatedly, the provision also applies in instances in which national or local economic conditions drastically improved or declined afer the original loan was issued but before the debtor filed for bankruptcy.  In either case, there is every reason to think that a properly risk-adjusted prime rate will provide a better estimate of the creditor's current costs and exposure than a contract rate set in different times.

124 S.Ct at 1964.

Cram down requires compensation for the time value of money and risk of default.  124 S.Ct. at 1960.

In Till, The Supreme Court held that a formula approach based upon the national prime rate plus an adjustment for risk should be used for cram down under

6

section 1325(a)(5)(B). This is known as the prime-plus or formula rate. 124 S.Ct. at 1961-62, 1964.

This Court has held that Till applies to bankruptcy cases filed under BAPCPA. Triad Financial Corp. v. Brown, (In re Brown), 346 B.R. 246 (Bankr. M.D. Ga. 2006) (Hershner, J.).

In the case at bar, the parties stipulate that the prime rate is 8.25%.[6] Debtor, through his proposed Chapter 13 plan, offers to pay GMAC's claim plus interest of 4.9%.[7] Debtor argues that to pay more than the contract rate (4.9%) would be a windfall to GMAC. Debtor argues that GMAC should not receive better treatment through his Chapter 13 plan than GMAC would receive if Debtor strictly performed under the contract. Debtor argues that payment of GMAC's claim plus the contract rate would give GMAC the "benefit of its bargain." The Chapter 13 Trustee supports Debtor's arguments.

"The issue before the Court is whether the 'formula approach' for determining interest rates as set forth in Till . . . applies to a creditor whose claim is treated as fully secured where the contract rate of interest is below prime." In re Soards, 344 B.R. 829, 830 (Bankr. W.D. Ky. 2006).

Courts that have considered this issue hold that Till applies even though the

---

[6] GMAC does not seek any adjustment to the prime rate for risk of default.

[7] Debtor was obligated to pay interest of 4.9% under the Retail Installment Sale Contract.

7

contract rate is less than the prime rate.[8] Daimler Chrysler Services North America LLC v. Taranto, 365 B.R. 85 (B.A.P. 6th Cir. 2007) (Till applies where proposed plan offers to pay claim in full in a shorter time period than originally contemplated under contract); In re Grunau, 355 B.R. 334, 336-37 (Bankr. M.D. Fla. 2006) (contract rate of 0% irrelevant, plan must pay Till rate); In re Ross, 355 B.R. 53 (Bankr. W. D. Tenn. 2006) (must pay Till rate, contract rate was 0%); In re Brill, 350 B.R. 853, 855-56 (Bankr. E. D. Wis. 2006) (must pay Till rate; contract rate of 0% was determined by market factors that no longer apply); In re Soards, 344 B.R. 829, 832 (Bank. W.D. Ky. 2006) (Till's prime rate (7.2%) applies even though contract rate is below prime (3.9%)); In re Scruggs, 342 B.R. 571 (Bankr. E.D. Ark. 2006) (plan must pay Till's prime rate (8%) rather than contract rate (0%)); In re Pryor, 341 B.R. 648, 651-52 (Bankr C.D. Ill. 2006) (plan must pay Till's prime plus rate rather than contract rate of 4.9%); In re Yelverton, 2007 WL 1521595 (Bankr. M.D. Ala. May 21, 2007) (Till requires prime rate of 8.25% plus risk adjustment rather than contract rate of 7.2%.).

In In re Pryor,[9] the Bankruptcy Court for the Central District of Illinois stated:

> In this Court's view, the Supreme Court's ruling in *Till* is clear that the prime rate as adjusted for risk applies in all cases involving cram down in a Chapter 13 plan, including those cases involving a below market contract rate of interest, whether the creditor's claim is oversecured or

---

[8] Each of the Chapter 13 cases, except for In re Pryor, was filed after the enactment of BAPCPA.

[9] 341 B.R. 648 (Bankr. C.D. Ill. 2006).

> undersecured. . . .
>
> . . .
>
> Although *Till* interpreted 11 U.S.C.§ 1325(a)(5)(B)(ii) in a case involving the strip down of a secured claim, the statute itself is broader and applies to all cram down cases. Hence, the decision in *Till* is not confined merely to those cases where the value of the collateral is less than the creditor's claim. Rather, *Till* applies in all chapter 13 cases which are being confirmed over the objection of a secured creditor irrespective of the value of its collateral in relation to the amount of its claim.

341 B.R. at 651.

"Although the Court [in Till] was dealing specifically with a 'strip-down' case, it is widely understood that its decision applies to all cramdown cases under Section 1325(a)(5)(B)." In re Grunau, 355 B.R. at 336.

In the case at bar, Debtor's Chapter 13 plan proposes to cram down the claim secured by his truck over the objection of the holder of the claim, GMAC.[10]  Debtor offers to pay the claim plus interest of 4.9%. The Court is persuaded that Debtor must pay the full amount of GMAC's claim plus interest as required by Till. GMAC has agreed to accept the prime rate (8.25%) with no upward adjustment for risk. Debtor's proposed Chapter 13 plan fails to pay the Till rate.

---

[10] Debtor cannot "strip down" GMAC's claim because the truck was purchased less than 910 days prior to the date Debtor filed for bankruptcy relief. 11 U.S.C.A. § 1325(a) (unnumbered paragraph after subsection (9)).

The Court is persuaded that GMAC's Objection To Confirmation should be sustained.

An order in accordance with this memorandum opinion will be entered this date.

DATED this 12th day of September, 2007.

    /s/ Robert F. Hershner, Jr.
ROBERT F. HERSHNER, JR.
Chief Judge
United States Bankruptcy Court